## BERLIN v. CANTRELL.

PARTIES TO ACTION: *Married Women.*
   A married woman may sue and interplead alone, for her separate property.

| 33 | 611 |
| 58 | 450 |

WITNESS: *Husband and wife, when competent.*
   A married woman interpleading for property seized as her husbands in an action of replevin against him, is a competent witness for herself on the trial of the interplea, but her husband is not.

| 33 | 611 |
| 65 | 469 |

MARRIED WOMEN: *Schedule of separate property.*
   The filing a schedule by a *femme sole* of her separate property, does not affect the common law marital rights of her after acquired husband in the property. The statute provides for scheduling by *married* women.

:SAME: ————————

   Property for which the scheduled property of a married woman has been exchanged, belongs to her husband unless scheduled. The schedule protects no property not mentioned in it.

APPEAL from *Jefferson* Circuit Court,
Hon. J. A. WILLIAMS, Circuit Judge.
*N. T. White* for appellant.
*F. B. Martin, contra.*

ENGLISH, C. J. :

On the 12th of January, 1876, Meyer Berlin brought an action of replevin in the Circuit Court of Jefferson county, against Henry Cantrell, for one two-horse wagon, one single horse wagon, one black mare mule, one black horse, two hundred bushels of corn, and two thousand pounds of seed cotton.

The plaintiff claimed title to the property by virtue of a mortgage with power of sale, executed to him by defendant on the 16th of April, 1865, to secure the sum of $300 for goods, wares, merchandize and supplies furnished and to be furnished defendant by plaintiff during the year 1875 ; the debt to be paid on or before the 1st of November of that year, and on default, plaintiff to take possession of the property and sell it, etc.

Upon complaint and affidavit, a writ of replevin was issued, and, on the execution of a bond by the plaintiff, the sheriff seized the property sued for, whereupon Ann Cantrell claimed the black horse, the one-horse spring wagon, and the two thousand pounds of seed cotton described in the complaint and writ, and delivered to the sheriff the following affidavit:

"In the Circuit Court of Jefferson county.

Meyer Berlin, plaintiff, v. Henry Cantrell, defendant.

Ann Cantrell says under oath that the black horse and one-horse spring wagon and two thousand pounds of seed cotton taken by the sheriff herein are her property, that she has the legal title to said property, and is entitled to the immediate possession of the same. Whereupon she asks that the claim be investigated and such judgment rendered as will be just and equitable.

ANN CANTRELL."

Sworn to before a justice of the peace.

Thereupon the plaintiff executed a bond of indemnity to the sheriff, and the sheriff delivered to him the property claimed, as well as the other property sued for, and returned the affidavit with the writ, etc.

At the return term, the plaintiff filed the following answer to the affidavit, treating it as an interplea:

"Comes the plaintiff, and for answer to the interplea filed herein, says that said interpleader, Ann Cantrell, is now and was before the institution of this suit the lawful wife of the defendant, Henry Cantrell, and as such has no legal capacity to sue in her own name, wherefore he prays said interplea be abated, and for general relief."

To this plea in abatement, the interpleader entered a demurrer in short, and the court sustained the demurrer.

Whereupon plaintiff filed a further answer to the affidavit of the interpleader, alleging: "That the said Ann Cantrell is

now, and was before the institution of this suit, the wife of the defendant, Henry Cantrell, and that said Ann Cantrell has never scheduled the said property mentioned in the mortgage from said defendant to plaintiff, and the same is not her separate property. Wherefore he prays judgment for said property against said interpleader.''

The case was submitted to a jury at the May term, 1877, and a verdict was rendered in favor of the interpleader for the black horse and spring wagon, and in favor of plaintiff for the two thousand pounds of seed cotton.

Plaintiff moved for a new trial, which was overruled, and judgment rendered against him, in favor of the interpleader, for the horse and wagon, and if not delivered, their value, which was found by the jury to be $80, and the plaintiff took a bill of exceptions and appealed to this court.

1. The court did not err in sustaining the demurrer of appellee to the plea in abatement of appellant. A married woman may sue alone for her separate property. *Gantt's Dig.*, sec. 4487, 4144: *Countz* v. *Marklin*, 30 Ark., 23: *Trieber and wife* v. *Stover & Co.*, Ib., 731. Appellee claiming as her separate property the horse and wagon seized by the sheriff under the writ of replevin against her husband, had the right, under the replevin statute, to claim them, as she did, by affidavit delivered to the sheriff, and the sheriff, as directed by the statute, returned the affidavit, with the writ, into court. *Gantt's Dig.*, sec. 5044. She might, without joining her husband, have sued the sheriff and the plaintiff in the replevin suit for the horse and wagon, claiming them as her separte property (*Hurshy* v. *Clarksville Institute*, 15 Ark., 128) but she thought proper to interplead for them in the replevin suit, and her interplea was in the nature of a cross-suit for the property. If she could sue alone for the property, she could certainly interplead alone for it.

After the writ and affidavit were returned into court, the better practice would have been for the claimant of the property to file a formal interplea, asserting her right to the property, but the appellant treated her affidavit as an interplea, and pleaded to it, and it was in writing, embodied sufficient matter to make up an issue upon, and support a verdict and judgment. *Neal* v. *Newland*, 4 Ark., 459.

II. It appears from the bill of exceptions that on the trial of the issue to the interplea, appellee was sworn as a witness on her own behalf, and the court ruled her competent against the objection of appellant.

This was not a trial in the main replevin suit between appellant, the plaintiff therein, and her husband, the defendant in the suit. On a trial in the main suit, she would not have been a competent witness for or against her husband. *Collins* v. *Mack*, 31 Ark., 685. But the interplea was her suit, in which, in legal effect, she was plaintiff, and claiming the property interpleaded for adversely to both appellant and her husband, and she was a competent witness for herself on the trial of her own suit. *Ib.*, *and schedule to present Constitution Sec. 2 ; Gantt's Dig., 248-2-3.*

III. As to scheduling the wife's property.

Appellee testified, in substance, that she was married to Henry Cantrell, defendant in the replevin suit, in the year 1872. That she was formerly the wife of Robert White, who died in the year 1870. That at the time of his death she was the owner of a bay mare and a bay colt, and after his death, on the 23d of December, 1871, she filed in the office of the recorder of Jefferson county, a schedule, claiming the mare and colt as her own individual property. Here a certified transcript of the schedule was produced and read to the jury, against the objection of appellant, which follows :

STATE OF ARKANSAS,
County of Jefferson. } ss.

Schedule of the separate property of Ann White (colored,) of said county and State, described as follows:

One bay mare about twelve hands high, and about five years old. One horse colt about two years old, bay color, ten hands high.

I, Ann White, do solemnly swear that the property mentioned above is my own separate property, and that the same was purchased with money which was acquired by my own industry and labor, and that said property, nor any part thereof, is subject to the debts of my late husband, Robert White, now deceased, nor the property of his estate; so help me God.

ANN WHITE."

Sworn to before the clerk, and filed and recorded 23d day of December, 1871.

She further testified that some time in the spring of 1873, her then husband, Henry Cantrell, at her request, and as her agent, traded the bay mare described in the schedule, for the black horse claimed in her interplea. That the trade was made for her.

That some time in the fall of the year 1873, her husband (Cantrell) traded the colt, described in the schedule, to some man in Pine Bluff, for the spring wagon claimed in the interplea. She directed him to trade the colt for a wagon, but was not present when the trade was made. He gave the colt and $30 for the wagon; she gave him the money to pay the difference; it was her money, and she did not obtain it from him.

After giving the history of the cultivation and gathering of the cotton claimed by her, but which it is not necessary to state, inasmuch as the verdict was in favor of appellant for the cotton, she further testified:

That she did not know that her husband had mortgaged her

black horse and spring wagon until some time in the summer of the year 1875, and as soon as she found it out, she made a fuss with him about it, and he afterwards informed her it was all right. She lived with her husband during the years 1874 and 1875, and knew he was trading with appellant, but she bought nothing from him herself. None of the property mentioned and described in the interplea was ever scheduled by her.

On the scheduling feature of the case, the court, on motion of appellee, and against the objection of appellant, instructed the jury as follows.

(2.) "If the jury believe from the evidence that Ann Cantrell was formally Ann White, and that while she was Ann White she owned other property, which she had scheduled and recorded as her separate property, and that after she married Henry Cantrell, she either in person or by and through an agent, swapped it for other property, or sold it and invested the money received therefor in other property, it was not necessary for her to have the last mentioned property scheduled, and recorded in order to vest title thereto in her."

(3.) "If Henry Cantrell executed a mortgage to the property in controversy when he had no title thereto, the owner of the property is in no way bound thereby, and such mortgage does not in any manner preclude the owner from asserting her right thereto."

On the same subject appellant moved four instructions, which the court refused, and he excepted. They are as follows :

(1.) " The law requiring married women to schedule their property, confers no rights upon an unmarried person, and if the schedule in this case was made and filed before marriage or not in contemplation of marriage, then it conferred no rights under the same."

(2.) " The object of the law requiring the wife to schedule

her separate property is for the purpose of preventing her husband from having a fictitious credit, and to notify all persons that the same is her own separate property, and not liable for the debts of her husband.''

(3). '' If the jury find from the testimony that the property in controversy is not the property described in the schedule, but that the husband, with the advice and consent of the wife traded the property mentioned in the schedule, for other property, and that the wife never had the property so received scheduled in her own name, then in law the property is the property of the husband, and he had the right to sell the same.''

(4.) '' If the jury find from the testimony that Henry Cantrell, husband to the interpleader, did exercise acts of ownership over the property in controversy, with the full knowledge and consent of his wife, and that he did execute the mortgage to plaintiff on said property, they will find for plaintiff for such property.''

The marital rights of the husband upon the facts in evidence, by the common law, are very plain.

Appellee claims to have been the owner of a bay mare and colt when she married Cantrell, her second husband. When Cantrell married her, and obtained possession of the property, he thereby acquired an absolute title to it; and though he traded the mare and colt for the black horse and spring wagon, claimed by her in the interplea, at her request, they likewise became his property, and he had the right to mortgage them to appellant.

Such are the common law rights of the parties, and it remains to be determined how far the common law rights have been affected by legislation, constitutional provisions, etc.

Appellee married Cantrell at some time in the year 1872, and

when the constitution of 1868 was in force, which contained
the following provision :

The real and personal property of any female in this State,
acquired either before or after marriage, whether by gift,
grant, inheritance, devise or otherwise, shall so long as she
may choose, be and remain the separate estate and property of
such female, and may be devised or bequeathed by her the
same as if she were a *femme sole*.  Laws shall be passed pro-
viding for the registration of the wife's separate property, and
when so registered, and so long as it is not entrusted to the
management or control of her husband otherwise than as an
agent, it shall not be liable for any of his debts, engagements.
or obligations."   *Art. XII, sec. 6, Const. 1868.*

No scheduling act was passed under this section of the con-
stitution of 1868, until the act of 28th April, 1873 was passed.
(*See Gantt's Digest, chap. 93, secs. 4193, 4202.*)

But by sec. 16, Art. XV of the Constitution of 1868, laws,
then in force not in conflict with the provisions of the Consti-
tution were continued in force until otherwise provided by the
Legislature, etc.

From the adoption of the Constitution of 1868, until the
passage of the Scheduling Act of 28th April, 1873, chap. III,
Gould's Digest, title MARRIED WOMEN (except so much as
relates to slaves) was in force.  *Humphries* v. *Harrison*, 30
Ark., 88 ; *Hydrick* v. *Burke*, Ib., 126.

Under the provisions of that chapter the scheduling of the
bay mare and colt by appellee when she was a *femme sole*
amounted to nothing, and did not affect the marital rights of
her husband.   The statute (sec. 7) provided for a MARRIED
WOMAN to schedule her property, and she was not entitled to
the protection of the statute until she filed her schedule in the
recorder's office, etc., unless the property was secured to her
separate use (sec. 8) by deeds, etc.   *Howell* v. *Howell, ad.,*

19 Ark., 344. *Beeman and wife* v. *Cowser et al.,* 22 Ark., 432.

A woman may by ante-nuptial contract with her intended husband, limit his marital rights as to her property, and protect it from liability for his debts (*Harrison* v. *Trader and wife*, 27 Ark., 288) but there is no provision of the common law by which she can accomplish the same object by a public schedule made by herself before marriage, and the statute only provides for scheduling by married women.

So the Act of 28th April, 1873, like sec. 7, chap. 93, Gould's Digest, provides that before any married woman shall have the benefit of the act she shall schedule her property. *Gantt's Digest*, sec. 4201.

The act of December 15, 1875, (Acts of 1875, p. 172) providing for the scheduling of the personal property of married women, under secs. 7 and 8, Art. 9 of the present Constitution, was passed after the execution of the mortgage, and has no application to this case.

The bay mare and colt scheduled by the wife before marriage, were traded for the black horse and spring wagon in the spring and fall of 1873, and the property obtained by the exchange was never scheduled under any act.

If we might be mistaken in attributing no value to the schedule made by appellee before marriage, surely that schedule could not protect the property claimed by her in this suit, which was not included in the schedule and which she did not own at the time it was made and recorded.

In *Howell* v. *Howell*, *ad.*, *sup.*, MR. JUSTICE SCOTT said:

"It is plain that the true intent of the Legislature, in reference to the schedule, was not only that it should perform the office of notice to creditors and purchasers, but also the not less important one of evincing, on the part of the married woman, her election to avail herself of the benefits of the law.

These benefits, for the enjoyment of which the law had also created for her ample legal capacity, were, nevertheless, but at the option of the married woman. Perhaps, having quietly surrendered to her husband at discretion, by force of the canons of the church, she might, for a time, desire no emancipation from his dominion, as that had been regulated by the common law ; but afterwards, prudential motives, in reference to herself or her offspring, might suggest the propriety of securing for herself the property she had brought into the marriage, or which had afterwards come in from her own kindred. This, it was the manifest intention of our law, with due regard to the rights of the creditors of her husband, to permit her to do so, at any time during coverture, so far as the same had not been disposed of by her husband, or incumbered with his debts.    *    *    But until the filing of the schedule no right accrues to her under any of the provisions of the statute, etc., save only that in case she might be possessed of property conveyed to her in and to her sole and separate use," etc.

So in *Beeman and wife* v. *Cowser, et al, sup.,* MR. JUSTICE FAIRCHILD said : To enable a wife to hold property under the married woman's law, it must be recorded as hers in the county where she lives, by means of being scheduled under the law, or by being devised, granted, decreed or transferred to her, by words that expressly set forth that the property is to be held by her exempt from the liabilities of her husband, etc.

IV. Henry Cantrell, the husband of appellee, was sworn as a witness on her behalf, against the objection of appellant, and permitted to testify, in substance, that his wife owned the bay mare and colt when he married her, that at her request, as her agent, and in her absence, he traded the mare and colt for the black horse and spring wagon claimed by her in the interplea, that they were her property and he had no right to mortgage them, and that they were put into the mortgage without

his knowledge and consent, and that when he found out that they were included in the mortgage, he procured appellant to release them, etc.

If this had been a trial of the main replevin suit between appellant and Henry Cantrell, he would have been a competent witness in his own behalf, but he was not competent to give the above testimony on the trial of his wife's interplea, which was her suit, as above shown. *Collins* v. *Mack, sup.*

V. On the subject of the release of the property, the court instructed the jury as asked by appellant, and he does not complain, on this appeal, of an instruction in his favor.

Appellee having failed to prove her title and right to possession of the black horse and spring wagon as alleged in her interplea, the court below erred in refusing appellant a new trial.

Reversed and remanded for a new trial.